**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ECLIPSE AESTHETICS LLC,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:15-CV-3748-M** |
| | § | |
| **REGENLAB USA LLC and EDWARD VAN HORNSTEIN, Individually, and REGENLAB SA,** | § | |
| **Defendants,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **SANJAY BATRA, AND AMY BATRA Individually** | § | |
| **Third Party Defendants.** | § | **JURY TRIAL DEMANDED** |

**DEFENDANTS' ORIGINAL COUNTER-CLAIM AGAINST COUNTER-DEFENDANT ECLIPSE AESTHETICS LLC AND ORIGINAL THIRD PARTY COMPLAINT AGAINST THIRD PARTY DEFENDANTS SANJAY BATRA AND AMY BATRA**

COME NOW, Defendants REGENLAB USA LLC AND REGENLAB SA and file this Counter-Claim against Counter-Defendant Eclipse Aesthetics LLC ("Eclipse") and this Third Party Complaint against Third Party Defendants Sanjay Batra and Amy Batra and for the same would show as follows:

## I.
## PARTIES

1. Plaintiff/Counter-Defendant Eclipse is a Limited Liability Company organized and existing under the laws of the State of Texas with a principal place of business in Dallas County, Texas located at 13988 Diplomat Street, Suite 160, Dallas, Texas 75234-8833. Eclipse is represented by counsel and has appeared herein. Eclipse may be served with citation through its Registered Agent Paul O'Brien, 13988 Diplomat Street, Suite 160, Farmers Branch, Texas 75234.

2. Defendant RegenLab USA is a Limited Liability Company organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York, and is represented by counsel and has appeared herein.

3. Defendant RegenLab SA is a Swiss Company headquartered in Lausanne, Switzerland and is represented by counsel and has appeared herein.

4. Defendant Edward von Hornstein is an individual residing in Munich, Germany. Mr. von Hornstein has not yet been served with process or appeared in this case.

5. Third Party Defendant Sanjay Batra is an individual residing at 147 Heather Drive, New Hope, PA. Because he is not a resident of Texas, Mr. Batra will be served with process through the Texas Secretary of State. Counter-Claimant/Third Party Claimants' claims arise out of Mr. Batra's conduct directed to or committed in the State of Texas.

6. Third Party Defendant Amy Batra is an individual residing at 147 Heather Drive, New Hope, PA. Because she is not a resident of Texas, Mrs. Batra will be served with process through the Texas Secretary of State. Counter-Claimant/Third Party Claimants' claims arise out of Mrs. Batra's conduct directed to or committed in the State of Texas.

## II.
## BACKGROUND

7. In 2004, Dr. Antoine Turzi applied for and in 2006 received a Swiss patent for the medical device "Regenkit", which incorporates a haematologic tube in a new medical technique to facilitate the production of Platelet-Rich Plasma ("PRP").

8. In 2007, Dr. Antoine Turzi and his colleague, Professor Donald Francis du Toit, discovered a new and extremely effective way to enhance PRP production by implementing a novel technique to vastly improve its purity. Dr. Turzi is an entrepreneur who received his education in Paris and Geneva in both biology and law. Prof. du Toit was Honorary Professor of

Cardiovascular Surgery at the University of Stellenbosch in Cape Town, South Africa. Today, their PRP products are used in a number of applications.

9. Dr. Turzi and Prof. du Toit also discovered that combining autologous tissues to the PRP preparation resulted in superior wound care and tissue regeneration. In 2007, Dr. Turzi and Prof. du Toit applied for a US patent in connection with this latest invention. Patent # 8,529,957 B2 was granted on September 20, 2013 and made specific reference back to Dr. Turzi and Prof. de Toit's August 2007 application.

10. Dr. Turzi started RegenLab SA in Lausanne, Switzerland in 2003. RegenLab SA sold PRP products throughout the European Union and in Asia. In January 2011, RegenLab SA decided to enter into the American market for such products. To facilitate sales of its PRP products for this market, RegenLab SA entered into an exclusive Distributive Agreement ("Agreement") with Eclipse, wherein Eclipse became the exclusive distributor of RegenLab SA's PRP products for plastic surgery and aesthetic markets in the United States. By the terms of the Agreement, RegenLab SA gave Eclipse the exclusive right to distribute its PRP products, and in return, Eclipse agreed not to distribute or market any products manufactured by RegenLab SA's competitors.

11. In order to maximize sales, Eclipse was required to attend RegenLab sales meetings, answer customer questions regarding the PRP products, meet sales quotas, and to be able to actually demonstrate the use of RegenLab SA's products to potential end-users. Eclipse accessed highly confidential and technical information regarding RegenLab SA's operations, its products, its pricing, and its customers. RegenLab SA invested tremendous trust that Eclipse would operate as a faithful distributor and that it would adhere to strict ethical and regulatory

standards. Eclipse specifically promised not to use RegenLab SA's trademarks or brand names and to keep all proprietary information confidential.

12. Between 2011 and early 2013, the two companies received tangible financial and intangible customer goodwill benefits from the unique quality and efficacy of RegenLab SA's PRP products.

13. However, early into the Agreement, Eclipse determined it could increase its profits by marketing and actively promoting RegenLab SA's PRP products for off-label uses. Unbeknownst to RegenLab SA, Eclipse began *approaching physicians* and *actively promoting* RegenLab SA's PRP products for uses not approved by the FDA, in violation of regulations. For example, Eclipse touted RegenLab SA's PRP to doctors who were providing the so-called "Vampire Facelift" to their patients. Eclipse created its own marketing brochures to peddle RegenLab's products directly to doctors with phrases such as "Unleash-the Power of PRP in Your Practice!" These brochures made broad claims that RegenLab's PRP products would result in "quantifiable improvements in skin complexion, texture and tone usually within three weeks." Eclipse neither sought, nor received RegenLab SA's approval to promote the RegenLab PRP products for off-label uses. Indeed, when RegenLab SA discovered that Eclipse was actively advertising off-label promotional material on its website, it demanded that Eclipse take down all such material. Eclipse assured RegenLab SA that it had complied. RegenLab assumed that Eclipse would not thereafter violate the Agreement or FDA regulations.

14. On April 19, 2013, the FDA issued a "cease and desist letter" to RegenLab SA and Eclipse, stating that RegenLab SA and Eclipse had committed serious breaches of FDA regulations regarding the off-label promotion of medical devices. Through this letter, RegenLab

SA learned that, despite assurances to the contrary, Eclipse was continuing its unauthorized practice of actively marketing RegenLab SA's products to physicians for off-label uses.

15. Understandably, RegenLab SA was alarmed and concerned about Eclipse's unethical and unauthorized direct-marketing of its products to providers. RegenLab SA immediately terminated the Agreement and severed its relationship with Eclipse. RegenLab SA had invested significant capital in research, man-hours, and marketing of its PRP products and had worked very hard to develop a strong reputation for the highest quality products. RegenLab SA expected its distributor would adhere to FDA regulations and refrain from approaching providers to market RegenLab's products for off-label uses. Eclipse's "off-label" marketing and the resulting, publicly available FDA cease and desist letter harmed RegenLab SA's reputation, the business goodwill it had developed, and its profits from authorized sales of its products.

16. Shortly after severing its relationship with Eclipse, RegenLab SA began its own distribution operations in the United States and formed RegenLab USA to facilitate sales of its PRP products. RegenLab USA now competes with Eclipse for distribution of PRP products.

17. In this same timeframe, Eclipse began selling its own "Eclipse PRP" product. Eclipse undertook the same type of off-label marketing practices for its PRP product. But worse, even as Eclipse was marketing its PRP, it continued to use RegenLab SA's logo alongside the name "Eclipse". Thus, an unsuspecting customer would conclude that the "Eclipse PRP" was in fact manufactured by RegenLab SA. Eclipse deliberately appropriated the RegenLab SA logo, knowing that RegenLab SA's reputation would serve as a proxy for the quality and reliability of the Eclipse product. Eclipse again put RegenLab SA at risk for action by the FDA.

18. At the same time, Eclipse began soliciting RegenLab SA's employees to distill their knowledge of RegenLab SA's products and further, to appropriate RegenLab SA's confidential

customer lists and sales information. Eclipse made employment overtures to Dr. Sanjay Batra and his wife, Amy Batra while both were employed by RegenLab. Dr. Batra served as a consultant and the General Manager for RegenLab USA for more than nine months and worked directly on its PRP products. Amy Batra was a salesperson and Office Manager for RegenLab USA's PRP products through a valid and binding Consulting Agreement. Both Batras developed intimate familiarity with RegenLab's products, from RegenLab SA's technical manufacturing processes to RegenLab USA's customer base and potential end-users.

19. On February 16 and 17, 2014, respectively, Dr. Batra and Mrs. Batra each sent RegenLab SA a "separation letter" purporting to end their employment. Each letter attempted to impose a mutual release. Amy Batra's letter further attempted to nullify her Consulting Agreement. RegenLab SA did not counter-sign either letter.

20. By April 2014, both Batras had accepted employment with Eclipse and immediately began working on Eclipse's PRP products. Further and unbeknownst to RegenLab, within weeks of Amy Batra's departure from the company, she began disseminating RegenLab USA's customer lists to Eclipse. Emails that Eclipse recently produced in discovery reveal that Eclipse hired Mrs. Batra for the specific purpose of "converting" RegenLab USA customers into Eclipse customers. To that end, Mrs. Batra provided Eclipse with a "MailChimp" list of RegenLab USA's customer e-mail addresses and other confidential information. While employed by RegenLab, Mrs. Batra worked closely with RegenLab's customers and acquired detailed and confidential information regarding these customers' medical practices, patient needs, and RegenLab's pricing structures. Mrs. Batra went so far as to request PRP training materials, so that she could "form [her] story as to why customers should convert to Eclipse".

21. In April 2014 at the American Academy of Dermatology's Annual Meeting, Eclipse proudly promoted a product it called "Eclipse PRP" for use in dental applications. A concerned party provided RegenLab SA with a sample of Eclipse's product. The Eclipse PRP was similar in appearance to the RegenLab PRP, but Eclipse had substantially modified the packaging and instructions for use. These alterations, in RegenLab SA's view, violated FDA regulations and could jeopardize the health and safety of patients.

22. RegenLab SA grew increasingly concerned that Eclipse was moving forward with marketing its PRP products without appropriate precautions and outside FDA regulations. On April 16, 2014, RegenLab SA sent a letter to the Office of Compliance and Biologics Quality at the FDA, which detailed at least a dozen different ways in which they believed "Eclipse PRP" product deviated from industry standards—including failure to place proper warnings on the packaging, lack of proper instructions, instructions contrary to the FDA approved indications for use, lack of contraindications, and conflicting instructions on storage temperatures for this highly sensitive material. The "Eclipse PRP" was not labeled as pyrogen-free, and Eclipse failed to document the quality control testing mandated for each batch of a medical device coming in contact with blood or blood components.

23. On April 25, 2014, RegenLab USA sent an email to its customers, which discussed the benefits of RegenLab's PRP product in the areas of hygiene and safety. Far from disparagement, RegenLab USA's communications were aimed at protecting the health and safety of its existing customers and potential end-users of PRP products.

24. Eclipse responded to RegenLab USA's legitimate communications by filing suit against RegenLab USA in state court for "business disparagement" in July 2014. More than a year later in November 2015, Eclipse filed suit in Federal Court against RegenLab USA for "trademark

infringement". Eclipse recently added RegenLab SA as a named defendant to both lawsuits. Despite stealing RegenLab SA's customer lists, and appropriating its logo to promote Eclipse's products, Eclipse is suing RegenLab USA and RegenLab SA to recover damages it claims it sustained from allegedly malicious conduct.

25. RegenLab SA and RegenLab USA now assert counter-claims against Eclipse and bring Third Party Claims against Dr. Sanjay Batra and Mrs. Amy Batra for their conduct as further detailed below. RegenLab SA and RegenLab USA seek compensatory, exemplary, and/or punitive damages.

## III.
## CLAIMS AGAINST COUNTER-DEFENDANT ECLIPSE AND THIRD PARTY DEFENDANTS SANJAY BATRA AND AMY BATRA

26. **Conspiracy:** Counter-Defendant and Third Party Defendants each and every one conspired together to misappropriate the trade secrets and customer lists of RegenLab SA and RegenLab USA for their own financial gain. These parties engaged in a conspiracy to defraud RegenLab SA and RegenLab USA of their rightful profits from the sale of RegenLab SA's PRP products. They conspired to appropriate RegenLab SA's logo to induce end-users to purchase Eclipse products and to use RegenLab USA's customer lists to contact and convert its customers to Eclipse.

27. Such conspiracy came to fruition when these parties stole RegenLab USA's confidential customer information. They actively began to solicit RegenLab USA's customers from the list and tried to "convert" RegenLab USA's customers to Eclipse through unfair means of competition. Their "conversion" plan resulted in tremendous customer confusion among doctors who had purchased RegenLab SA's PRP products from Eclipse. These former RegenLab USA employees conferred misleading information about the comparative benefits of Eclipse PRP

versus the RegenLab SA products they had previously promoted. RegenLab SA and RegenLab USA have been damaged by Third Party Defendants and Counter-Defendant including, but not limited to lost profits, lost past business and lost future business opportunities. Because of Eclipse's conduct, many of RegenLab USA customers suffered interruption of their supplies, which also resulted in lost sales. RegenLab SA and RegenLab USA's goodwill and business reputations also have been damaged by such conduct.

28. **Violation of Texas Uniform Trade Secrets Act ("TUTSA"):** By wrongfully appropriating, using, and benefiting from RegenLab SA and RegenLab USA's customer lists and other trade secrets, Third Party Defendants and Counter-Defendant violated TUTSA, which specifically protects customer lists as a trade secret. Tex. Civ. Prac. & Rem. Code § 134A.002(6)

29. **Violation of The Defend Trade Secrets Act of 2016:** By wrongfully appropriating, using, and benefiting from RegenLab SA and RegenLab USA's customer lists, Third Party Defendants and Counter-Defendant violated 18 U.S.C.A. § 1836 *et seq.*, which protects business trade secrets.

## IV.
## CLAIMS AGAINST COUNTER-DEFENDANT ECLIPSE

30. Paragraphs 26 – 29 are incorporated as if fully set forth herein.

31. **Breach of contract:** Eclipse and RegenLab SA entered into a valid and legally-binding Distributor Agreement ("the Agreement"). Eclipse breached the Agreement by actively marketing RegenLab SA's PRP products to physicians and other customers for "off-label" applications, without RegenLab SA's knowledge or authorization, both of which were required. This breach resulted in damages to RegenLab SA's reputation and resulted in loss of profits and

goodwill. RegenLab SA was forced to form its own corporate entity to distribute its products in the United States, which resulted in delays of product deliveries and loss of customers.

32. **Tortious interference with employment agreement:** Eclipse improperly interfered with the employment agreements of Dr. Sanjay and Amy Batra. Eclipse induced the Batras to violate their employment and confidentiality agreements with RegenLab. Eclipse's tortious interference was the proximate cause of damages to RegenLab USA, including, but not limited to, lost productivity, lost profits, and loss of proprietary and confidential information, which loss is immeasurable.

33. **Tortious interference with contract:** Eclipse tortuously interfered with RegenLab USA's existing and potential clients by (1) using the stolen customer lists to identify and contact RegenLab USA's customers and (2) by communicating false information about RegenLab SA's products in an attempt to convert these customers into purchasing the Eclipse PRP product in lieu of the RegenLab SA product.

34. **Defamation:** Eclipse has in the past and continues to communicate false information to RegenLab USA and RegenLab SA's existing and potential customers regarding the quality and efficacy of the RegenLab SA's PRP products. Such false information includes, but is not limited to, Eclipse's knowingly and falsely telling customers that RegenLab SA's PRP products contained a much lower platelet percentage than the Eclipse PRP products. Eclipse is using this misinformation to convert existing and potential RegenLab USA customers into Eclipse customers.

**V.**
**CLAIMS AGAINST THIRD PARTY DEFENDANT DR. SANJAY BATRA**

35. Paragraphs 26 – 29 are incorporated as if fully set forth herein.

36. **Theft of Trade Secrets:** Dr. Batra was in possession of proprietary and technical knowledge regarding RegenLab SA's PRP products. Further, he had access to RegenLab USA's private customer lists and pricing information. Dr. Batra appropriated these secrets for the purposes of aiding Eclipse in securing lucrative deals for distribution of the Eclipse PRP product. Dr. Batra's conduct was willful and malicious and carried out with the intent to harm RegenLab.

**VI.**
**CLAIMS AGAINST THIRD PARTY DEFENDANT AMY BATRA**

37. Paragraphs 26 – 29 are incorporated as if fully set forth herein.

38. **Breach of Consulting Agreement:** Mrs. Batra entered into a valid and binding Consulting Agreement with RegenLab USA. Mrs. Batra specifically agreed to maintain the confidentiality of the proprietary information she obtained through her work on RegenLab USA's behalf. RegenLab USA's customer lists were protected, confidential information not available to the public. She violated this duty, and did so maliciously and intentionally. Not only did Mrs. Batra appropriate the customer lists, she then disseminated them to Eclipse, her new employer and direct competitor. Mrs. Batra's breach of her Consulting Agreement has caused immeasurable damage to RegenLab USA and RegenLab SA in terms of its existing and potential customers.

39. Further, Mrs. Batra agreed not to accept retention by a competitor for a period of one year following separation from RegenLab USA. By accepting employment with Eclipse, a direct competitor of RegenLab USA and RegenLab SA, Mrs. Batra breached her contractual duties under her Consulting Agreement.

40. **Defamation:** Mrs. Batra embarked on a course of conduct that was directly aimed at harming RegenLab USA and RegenLab SA by formulating a "story" to convince RegenLab USA's customers to convert to Eclipse products. She directly contacted RegenLab USA's customers using RegenLab USA's confidential information and made misrepresentations about the RegenLab SA PRP products, all with the intent to induce current RegenLab USA and RegenLab SA customers to cease business dealings and initiate new dealings with Eclipse.

41. **Tortious Interference with Contract:** Mrs. Batra directly contacted RegenLab USA's customers with the intent to convert them to Eclipse customers and provide misleading information about RegenLab SA's products. Absent the "story" Mrs. Batra conveyed regarding the RegenLab PRP products, these customers would have remained RegenLab USA and RegenLab SA customers. Mrs. Batra's conduct has caused loss of business profits, business opportunities, and immeasurable damage to RegenLab USA and RegenLab SA's reputation and goodwill.

## VII.
## DAMAGES

42. **Economic Damages:** As a direct, proximate result of Counter-Defendant and Third Party Defendants' tortious conduct and contractual breaches, RegenLab USA and RegenLab SA have suffered and will continue to suffer substantial economic damages, including but not limited to loss of business profits, loss of business opportunities, lost man-hours, and loss of productivity.

43. **Business Reputation:** As a direct, proximate result of Counter-Defendant and Third Party Defendants' defamation and fraudulent misrepresentations, RegenLab USA and RegenLab SA have suffered and will continue to suffer immeasurable harm to their business reputations.

44. **Loss of Goodwill:** As a direct, proximate result of Counter-Defendant and Third Party Defendants' defamation and fraudulent misrepresentations, RegenLab USA and RegenLab SA have suffered and will continue to suffer immeasurable harm to their customers' goodwill.

## VIII.
## PUNITIVE DAMAGES

45. Eclipse and the Batras willfully and maliciously attempted to eviscerate RegenLab SA and RegenLab USA's business. They stole RegenLab's protected, proprietary customer lists to identify and solicit RegenLab's customers and deprive RegenLab of business. They maligned the quality and efficacy of RegenLab SA's PRP products, which has resulted in loss of business reputation and goodwill. Consequently, RegenLab SA and RegenLab USA seek exemplary damages awardable under TUTSA, Tex. Civ. Prac. & Rem. Code § 134A.004(b) and pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C.A. § 1836.

46. Eclipse and the Batras willfully and maliciously converted RegenLab SA and RegenLab USA's customer lists; accordingly, RegenLab SA and RegenLab USA seek punitive and/or exemplary damages for this tortious conduct.

## IX.
## DECLARATORY JUDGMENT

47. Pursuant to Tex. Civ. Prac. & Rem. Code § 37.004(a), Defendant requests that the Court issue declaratory judgment regarding the validity of the contracts described above.

## X.
## ATTORNEYS' FEES

48. Pursuant to Tex. Civ. Prac. & Rem. Code § 134A.005 and Tex. Civ. Prac. & Rem. Code §38.001, Defendant/Counter-Plaintiff/Third Party Plaintiff seeks recovery of its attorneys' fees and costs.

## PRAYER

Defendants RegenLab USA and RegenLab SA pray that Third Party Defendants Dr. Sanjay Batra, and Amy Batra be cited to appear in this case. Defendants further pray that after trial of this matter, the Court enter final judgment against Eclipse, Dr. Sanjay Batra, and Amy Batra, award the maximum amount of damages against these parties, including compensatory, punitive, exemplary damages, and attorneys' fees, costs of litigation, and such other and further relief to which RegenLab SA and RegenLab USA may show themselves justly entitled.

Dated: July 13, 2016

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
901 Main St Ste. 4800
Dallas, Texas 75202
(214) 698-8000 (Telephone)
(214) 698-1104 (Facsimile)

By: */s/Lawrence A. Waks*
**Lawrence A. Waks**
State Bar No. 20670700
lawrence.waks@wilsonelser.com
**Jillian Keith**
State Bar No. 24013671
jillian.keith@wilsonelser.com

-And-

**KILGORE & KILGORE PLLC**
3109 Carlisle, Suite 200
Dallas, TX 75204
(214) 969-9099 (Telephone)
(214) 953-0133 (Facsimile)

**Theodore Carl Anderson, III**
State Bar No. 01215700
Email: tca@kilgorelaw.com
**ATTORNEYS FOR DEFENDANTS/COUNTER-PLAINTIFF, AND THIRD PARTY PLAINTIFF**

## CERTIFICATE OF CONFERENCE

I hereby certify on July 6, 2016, my partner Jillian J. Keith conferred with counsel for Eclipse, who stated he was opposed to the filing of this Counter-Claim and Third Party Petition.

*/s/Lawrence A. Waks*
**Lawrence A. Waks**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on counsel of record on the 13th day of July, 2016.

*/s/Lawrence A. Waks*
**Lawrence A. Waks**